UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CLIFTON G. CONLEY                    CIVIL ACTION NO. 06-cv-0482

VERSUS                               JUDGE HICKS

WARDEN LOUISIANA STATE               MAGISTRATE JUDGE HORNSBY
PENITENTIARY

# REPORT AND RECOMMENDATION

**Introduction**

A Webster Parish grand jury indicted Clifton Conley ("Petitioner") on two counts of first degree murder. Petitioner later pleaded guilty to two counts of second degree murder, with the understanding that he would testify truthfully against his two co-defendants. Petitioner received the mandatory life sentences for his convictions. No direct appeal was filed.

Petitioner later filed a post-conviction application in the state courts and complained that his counsel was ineffective for not filing an appeal. He sought an out-of-time appeal as a remedy. The state courts, without holding a hearing, denied relief. Petitioner now seeks federal habeas corpus relief on the issue.

**Relevant Facts**

The pages of the state court record submitted by the District Attorney are not numbered, as required by the order that provided instructions for filing a response, so this recommendation will lack citation to the relevant pages of the record. In the future, the

District Attorney should number the pages of the state court record as ordered and, in his memorandum, cite the relevant pages of the transcript where important rulings, testimony, or other events may be found. Failing to do so substantially increases the burden on the undersigned, the district judge, and the Fifth Circuit.

There was no trial in this case, so the best source of facts in the record regarding the underlying crime is found in the trial court's recitation of facts in the pre-sentence report. The report showed that Petitioner was in Minden, visiting from Kansas City, and solicited the help of Kevin Adkins and Aldric Lathen to help him rob Lee's Grocery, a store that was operated by Mr. Anstead and his son. Petitioner, in planning the robbery, told both Lathen and Adkins that he did not want to leave any witnesses. The three men went to the store and waited for customers to leave. Petitioner went inside and asked Mr. Anstead to cook him a cheeseburger. Petitioner then shot Mr. Anstead in the top of the head with a .380 pistol. The younger Mr. Anstead attempted to run out of the store, but he was grabbed by Mr. Adkins. Petitioner then ran up and shot the younger Anstead in the head.

The men took money from the cashbox and the cash registers. Petitioner also took the older Mr. Anstead's wallet, for a total of $2,109. Mr. Lathen and Mr. Adkins split $109, and Petitioner took the rest of the money.

The Minden police were dispatched to the store after a report of the shooting. The younger Mr. Anstead was dead upon police arrival, and the senior Anstead died later that

day. Petitioner was soon arrested by Shreveport police as he was attempting to catch a bus to Kansas City, and $1,916.50 was recovered from his person.

Petitioner was represented in the capital case by both John M. Lawrence and Larry Johnson, who were appointed. The lawyers appeared with Petitioner in court in January 2003 to enter a guilty plea to the second degree murder plea bargain, which avoided the prospect of the death penalty. Petitioner was placed under oath, and his counsel stated that the specific provision of second degree murder to which the plea would be entered was the subsection that applies when the offender is engaged in the perpetration or attempted perpetration of armed robbery and a person is killed.

The judge engaged in a traditional <u>Boykin</u> colloquy. He also asked Petitioner if he was "satisfied with the representation they've afforded you up until this point?" Petitioner answered, "Yes, sir." Petitioner was told that if he went to trial and were found guilty he would have the right to an appeal and appellate counsel. The prosecutor gave a brief summary of the facts, much less detailed than recited above. He stated that Petitioner and two co-defendants "did commit armed robbery then and during the commission of the armed robbery David Anstead, Sr. and David Anstead, Jr. was killed during the course of the armed robbery which occurred at Lee's Grocery Store, which is located at 302 Talton Street here in Minden, Webster Parish, Louisiana." Petitioner was asked if those facts were substantially correct, and he answered "Yes, sir." Petitioner was asked again if he wished to enter a plea of guilty, and he said that he did. The court then asked both defense attorneys, Mr. Lawrence

and Mr. Johnson, if they believed the plea was being made freely and voluntarily, and they agreed that it was. The court accepted the plea. Sentencing was delayed in light of the approaching trials of the two co-defendants against whom Petitioner had agreed to testify.

Petitioner appeared in court about a year later, in February 2004, for sentencing. He was represented at that hearing by Jack "Buddy" Slaid of the Indigent Defender Board. Attorney Slaid explained that former counsel Mike Lawrence had since resigned as a public defender and had begun working for the district attorney. Slaid then said, "In speaking with [Petitioner] just now to inform him of those circumstances, he indicated that he wants to withdraw his guilty plea entered with Mr. Lawrence some time back and asked me to make that request known to the Court."

The court asked Petitioner for the grounds for his motion to withdraw his plea. Petitioner said he felt like Lawrence "wasn't representing me right" and that every time he saw Lawrence it "was right before court, before I came in here, so I ain't never see him, he never come and talked to me, you know." The court reminded Petitioner that when he entered his plea he stated that he was satisfied with his representation to that point. Petitioner responded that since that time, he had talked to his family, who said that he needed to take the case to trial. The court explained that a mere change of mind is not grounds to withdraw the plea. The case had previously been set for trial, and a jury was even convened when Petitioner elected to take a plea offer that took the death penalty off the table. The court

added, "It was probably a good thing that you took that plea, because in all likelihood you would have been found guilty and would have been sentenced to die in the electric chair."

The court again explained that a mere change of mind did not allow withdrawal of the plea. There must be some problem with the plea. Petitioner responded that he was not guilty of murder, "I didn't murder nobody, so that's why I want to withdraw my plea." The judge reminded Petitioner that he specifically asked Petitioner if the recited factual basis of the murders was true, and Petitioner agreed that it was. The court said that the contention that counsel did not adequately represent Petitioner could be grounds for a post-conviction application, but it was not grounds to withdraw the guilty plea. Consecutive life sentences were imposed. The court advised, "You have 30 days from today's date (February 23, 2004) to file notice of appeal." The final remarks at the sentencing were Attorney Slaid's objection "for the record" to the denial of the request to withdraw the plea and Petitioner's statement, "I want to withdraw my plea because I am not guilty."

Petitioner later sent a letter to the Clerk of Court dated March 11, 2004 and received by the Clerk on March 15, 2004. Petitioner wrote that he had been told by the judge that he had 30 days to request consideration of his sentence. Petitioner said that, since his sentencing, he did not have access to a law library to prepare such a motion. He asked that his letter be entered in the record as his intent "to file an out-of-time reconsideration of sentence as soon as I'm afforded access to the legal materials needed to file such motions." He asked the court to "rule on this letter of intent as being sufficient as my getting notice

before the 30-day time limitation has expired for my filing a reconsideration of sentence." The trial judge summarily denied the request for reconsideration of sentence on April 5, 2004.

Petitioner wrote a letter to the state appellate court in October 2004 and stated that he was writing with reference to an appeal that was filed between February 24 and February 29, 2004 by Attorney Slaid. Petitioner wrote, "I was sentenced on Feb. 23, 2004 and at that time Mr. Slaid (my attorney) said that he would be appealing my sentence." Petitioner somehow concluded, "Therefore my appeal was filed between the 24th and 29th of February 2004." He asked that the appellate court provide him a status report and a copy of any ruling on the appeal.

The clerk of the appellate court responded by letter dated November 1, 2004. She stated that the court had not received a notice of appeal from the district court indicating that an appeal had been taken in the referenced case. She suggested that Petitioner contact the clerk of the district court and inquire as to whether any appeal was filed.

**Post-Conviction Proceedings**

Petitioner, in November of 2004, filed an application for post-conviction relief. He argued that he was denied his right to a direct appeal, as guaranteed by Louisiana law. He also argued that the failure of his counsel to timely file an appeal was ineffective assistance of counsel. For relief, Petitioner asked that the court grant him an out-of-time appeal with appointed counsel.

The trial court judge construed the application as an indication that Petitioner would like to appeal the ruling that denied his motion to withdraw his guilty plea and/or the consecutive natural-life sentences that were imposed. The court noted that Petitioner was advised of the 30-day time limit to file an appeal, but neither Petitioner nor his attorney filed a notice of appeal. The court then held that Petitioner had not met his burden of showing ineffective assistance of counsel because he had failed to either set forth that he requested his attorney to file an appeal or present circumstances that prevented Petitioner himself from filing a pro se appeal. The court also noted that Petitioner did not articulate any grounds on which he would have appealed.

Petitioner filed a writ application with the state appellate court. That court denied the writ, with the following opinion:

> Under the factors set forth in State v. Counterman, 475 So.2d 336 (La. 1985), the trial court did not err in denying relief. At sentencing, the applicant was informed of his right to appeal (and thus the record is not silent on notice) and has not shown that he personally sought or requested his attorney to seek a timely appeal. He has not shown any fault or neglect on the part of his attorney in timely perfecting an appeal. The trial court did not err in denying an out-of-time appeal based on this record, and the writ is denied.

Petitioner filed a writ application to the Supreme Court of Louisiana, which issued the following decision: "Denied. State v. McKinney, 406 So.2d 160, 161 (La. 1981)." A request for reconsideration was summarily denied. The cited McKinney case is not directly dispositive of Petitioner's case. The McKinney defendant pleaded guilty and then wished

to appeal a *pre-plea* ruling on a motion to suppress. McKinney held that the guilty plea waived appellate review of the pre-plea ruling. This case, however, does not involve a desire to appeal a pre-plea ruling. Rather, the only possible grounds for appeal presented in this case relate to the post-plea request to withdraw the plea, and perhaps the imposition of consecutive sentences. Petitioner has not identified any pre-plea rulings that he wishes to appeal.

**Analysis**

The law governing ineffective assistance for lack of a direct appeal is found in Roe v. Flores-Ortega, 120 S.Ct. 1029 (2000). The petitioner in Roe pleaded guilty to second degree murder and was sentenced to fifteen years to life in state prison. The trial judge told him he could file an appeal within 60 days from the date of sentence and that, if he could not afford counsel, counsel would be appointed to represent him on appeal. The public defender wrote "bring appeal papers" in her file, but no notice of appeal was filed within the permitted time. Petitioner later tried to file a notice of appeal, but the clerk rejected the notice as untimely. Petitioner then sought habeas relief, and the case proceeded to the Supreme Court.

The Court judged the claim under the familiar test of Strickland v. Washington, 104 S.Ct. 2052 (1984), which holds that defendants have a Sixth Amendment right to reasonably effective legal assistance. A defendant claiming ineffective assistance must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant.

In the context of whether counsel must file an appeal, the Court first held that a lawyer who disregards specific instructions from his client to file a notice of appeal acts in a manner that is professionally unreasonable. Roe, 120 S.Ct. at 1035. At the other end of the spectrum, a petitioner cannot complain of ineffective assistance if he explicitly tells his attorney not to file an appeal and the attorney follows those instructions. Id.

In this case, the state court did not conduct an evidentiary hearing or otherwise receive any evidence from defense counsel regarding his instructions, if any, regarding direct appeal, or whether counsel consulted with his client about an appeal. There is present in the record the letter from Petitioner to the appellate court in which he suggests that counsel said that he would file an appeal of the sentence. The state court decisions did not address the letter, and it is not even clear from the way the record is put together whether the letter was attached to the post-conviction application or otherwise presented to the state court in those proceedings. It is, however, apparently part of the state court record, as the district attorney filed it with this court.

This court is not reviewing the issues presented by Roe *de novo*. Rather, federal habeas corpus relief may not be granted with respect to this claim, which was adjudicated on the merits in the state court, unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Relief may also be granted if the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

There is no evidence that Petitioner told his attorney not to appeal. On the other hand, Petitioner did not make a direct representation in his post-conviction application that he affirmatively instructed his attorney to file a direct appeal. Petitioner has also not made a direct representation to the court in his federal petition that he instructed his attorney to file an appeal. The only inkling of an indication that Petitioner gave such direction is found in Petitioner's somewhat curious-sounding letter to the state appellate court. Considering that Petitioner had the burden on his post-conviction application of articulating the relevant facts, it was not objectively unreasonable for the state courts to find (albeit implicitly) that Petitioner did not expressly instruct counsel to file or not file an appeal.

The next question that must be analyzed under Roe is whether counsel was deficient for not filing a notice of appeal when Petitioner did not clearly convey his wishes one way or the other. The first inquiry is to ask "whether counsel in fact consulted with the defendant

about an appeal." Roe, 120 S.Ct. at 1035. "Consult" means advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. Id.

There is no evidence, one way or the other, that Attorney Slaid consulted with Petitioner about a possible appeal. Roe states that if counsel has not consulted with the defendant, the next question is whether counsel's failure to consult with the defendant itself constitutes deficient performance. In other words, when does counsel have an obligation to consult with his client about an appeal? The Court stated that the better practice is for counsel routinely to consult, but the Court could not as a constitutional matter hold that a failure to consult was necessarily unreasonable in every case. The Court posed the following example: a defendant consults with counsel, counsel advises that a guilty plea probably will lead to a two year sentence, the defendant expresses satisfaction and pleads guilty, the court sentences the defendant to two years as expected, the court informs the defendant of his appeal rights, and he does not express any interest in appealing. If counsel in that case concludes there are no non-frivolous grounds for appeal, he is likely not, said the Court, acting unreasonably if he does not consult regarding an appeal. Another example provided by the Court is when a sentencing court's instructions about appeal rights in a particular case are "so clear and informative as to substitute for counsel's duty to consult." Roe, 120 S.Ct. at 1036.

Petitioner did plead guilty, and his life sentences were mandatory, but Petitioner did not leave the sentencing totally satisfied. He continued to request that his plea be withdrawn because he was not guilty of murder. On the other hand, the court did plainly instruct Petitioner that he had 30 days from the sentencing date to file an appeal. Petitioner, for whatever reason, did not file an appeal but did demonstrate his ability to file matters when he filed a motion to reconsider his sentence.

Pursuant to Roe, the court determines whether counsel had a duty to consult by examining whether there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), *or* (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. 120 S.Ct. at 1036. The inquiry must examine all relevant factors in a given case, but the Supreme Court expected that courts would find "in the vast majority of cases" that counsel had a duty to consult about an appeal. Id. at 1037.

Some of the facts pertinent to the duty to consult are also relevant to the second component of the Strickland test, prejudice to the defendant. Roe explains that a defendant need not show that he would have prevailed on appeal, and even an inability to specify the points he would raise if his right to appeal were reinstated will not foreclose the possibility that he can show prejudice. Rather, to show prejudice in a case such as this, a defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Roe, 120 S.Ct.

at 1038-40. Evidence of a non-frivolous ground for appeal or that the defendant promptly expressed a desire to appeal will often be highly relevant. Id. at 1039.

A look at the law surrounding the single issue Petitioner complained about at sentencing is helpful to assessing the duty to consult and the prejudice component. Louisiana law provides that a trial court may allow a guilty plea to be withdrawn at any time prior to sentencing. La. C. Cr. P. art. 559. However, the withdrawal of the plea "is discretionary with the trial court, subject to reversal only if that discretion is abused or arbitrarily exercised. State v. Youngblood, 740 So.2d 687, 690 (La. App. 2d Cir. 1999). "Generally, a denial of a motion to withdraw a guilty plea will not be reversed on appeal if the record clearly shows the defendant was informed of his rights and the consequences of his plea, and that the plea was entered into voluntarily." State v. Raines, 788 So.2d 627, 628 (La. App. 5th Cir. 2001). Petitioner admitted his guilt under oath after being fully advised of his rights, but he apparently thought that he should go to trial after visiting with his family. Petitioner afforded no explanation for his alleged lack of guilt or why he previously stated under oath and in open court that he was guilty of two murders.

Under these circumstances, a rational defendant would not want to appeal because there are no non-frivolous grounds for appeal. There is no apparent basis to find that the trial court judge abused his discretion to deny the plea withdrawal or that a meritorious appeal could be made under the demanding Louisiana jurisprudence on the issue. Petitioner has had

many months to come up with a non-frivolous issue for appeal, but he has yet to articulate one to the state or federal court.

Counsel may nonetheless have a duty to consult about an appeal if this particular defendant has reasonably demonstrated to counsel that he was interested in appealing. Petitioner did end his sentencing with his statement that he wished to withdraw his guilty plea, but he never said anything regarding an appeal, even when the sentencing judge advised him of that right and the appeal deadline. Had counsel consulted with Petitioner and explained the relevant law to him, such as the lack of a basis to find that the trial court abused its discretion in denying the withdrawal of the plea or the futility of appealing a mandatory life sentence, there is little likelihood that Petitioner would have nonetheless insisted on a timely appeal.

Reasonable minds could perhaps argue or even reach different conclusions with respect to the duty to consult and the prejudice component if the issues were being decided for the first time. But, as noted above, this court is not reviewing this case *de novo*. The state court has adjudicated this claim on the merits and denied it, and this court may grant habeas relief only if that decision was an objectively unreasonable application of Roe v. Florez-Ortega. Reasonable minds might disagree, but there is an adequately reasonable basis in this record for the state court's rejection of the claim. Habeas relief is not warranted.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of January, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE